UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| v. ) | CAUSE NO.: 1:13-CR-4-TLS |
| JULIUS LAWSON, ) | |
| Defendant. ) | |

**OPINION AND ORDER**

The Defendant, Julius Lawson, is serving a sentence for his role in attempting to rob a person having custody of mail matter, money, or property of the United States, 18 U.S.C. § 2114(a), using a firearm during and in relation to a crime of violence, 18 U.S.C. § 924(c), and interfering with the performance of duties of an employee of the United States, 18 U.S.C. § 111(a)(1). This matter is before the Court on the Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF No. 135].

**BACKGROUND**

On December 19, 2012, at around 3:30 PM, two men entered the Diplomat Plaza Post Office located in Fort Wayne, Indiana, and attempted to rob items from inside the Post Office. An investigation led to the arrest of the Defendant as one of the perpetrators.

On January 23, 2013, the Government filed an Indictment [ECF No. 18] charging the Defendant with attempting to rob a person having custody of any mail matter, money, or property of the United States and aiding and abetting, in violation of 18 U.S.C. § 2114(a) and 18 U.S.C. § 2 (Count 1); use of a firearm during and in relation to a crime of violence and aiding

and abetting, in violation of 18 U.S.C. § 924(c) and 18 U.S.C. § 2 (Count 2); and interference with the performance of the duties of an employee of the United States and aiding and abetting, in violation of 18 U.S.C. § 111(a)(1) and 18 U.S.C. § 2 (Count 3).

The Court conducted a five-day jury trial, which began on May 14, 2013, and concluded on May 21 when the jury returned verdicts of guilty as to all three counts.

The jury heard testimony from witnesses who were inside the post office during the attempted robbery. Testimony from a customer revealed that one of the men (the "gunman") held a gun on her while the other (the "counter-jumper") jumped over the counter to get behind the clerk stations. The Government presented evidence to support its theory that the Defendant was the counter jumper. A postal employee and window clerk, Cathy Weigold, observed the two subjects when they first entered the customer P.O. box lobby area through the front door. She locked eyes with the counter-jumper. As he entered the customer lobby area where Weigold was working, she saw him pull a mask up from under his chin area, covering his mouth up to the bridge of his nose. Weigold ran into the manager's office, where she and two other employees barricaded themselves until police arrived. She continued to watch the events on a monitor located inside the office and called 911.

Dawn Hunter was a customer inside the post office when the men entered. The gunman stated "I have a gun" and pointed a gun at her midsection while standing within arm's reach. The counter-jumper walked over to Hunter and rummaged through her purse and wallet, but he took nothing. The gunman then directed Hunter to turn around and kneel in front of him. Hunter then saw the Defendant jump over the middle counter. She witnessed him jump back over and leave with his accomplice.

While watching the surveillance monitor from the manager's office, Weigold observed the counter-jumper jump the middle counter, then stand in front of the partition located behind the window clerk stations. He went both directions from the partition, including the side where the Manager's office is located. Behind the counter were items of value and cash.

Surveillance photos show the counter jumper placing his left hand on the counter as he vaulted over it. Surveillance photos also show the gunman and Hunter watching the counter-jumper as he jumps over the counter and then back again before they flee. Hunter remained crouched down on the floor and called 911, twice. During her second call, she relayed that a cell phone located on the counter was going off, and that it had not been there before.

Police arrived and secured the scene. While police were investigating the scene, the cell phone began to ring. Postal Inspector Kathryn Maxwell viewed the phone's display, which showed a ten-digit number ending in 1880 and read "Violet."

The calls being received were from a phone registered to Violet Hanson, the mother of Lawson's son. That same day, Postal Inspector Andrew Gottfried went to Hanson's residence. While there, he saw the Defendant and another man. Hanson consented to a search of her cell phone. There were seven outgoing calls made to Lawson's phone on the day of the attempted robbery.

On December 20, FWPD Detective Gary Morales conducted a forensic examination of the cell phone dropped on the counter and determined that the dialing number on the phone was 260-246-8662 with the IMSI number as 310260547716993. The name Violet with number 260-443-1880 was one of the contacts stored in the phone. The phone also contained photographs of an individual taking pictures of himself with the cell phone. The metadata

information indicated that the pictures were taken on December 13, 14, 16 and 17, 2012. Inspector Gottfried later identified the individual in those photographs as the Defendant.

Susan Johnson, Custodian of Records for T-Mobile, also testified at the trial. She explained that the subscriber record information for the prepaid cell phone (recovered from the postal counter) was in the name of Julius Lawson with mobile number 260-246-8662 and IMSI number 310260547716993. The call detail records for the Defendant's phone for the month of December reflected numerous calls and text messages made to and received from Violet Hanson's cell phone number. The T-Mobile call detail records also reflected a call to the Diplomat Plaza Post Office.

FWPD Detective Joel Slygh testified that he conducted a forensic examination of Hanson's cell phone. The forensic examination report confirmed that the phone number associated with Hanson's phone was in fact 260-443-1880. Hanson's phone had also received text messages from the Defendant's cell phone number.

FWPD Detective Mark A. Rogers testified that he took photographs at the Post Office, including a picture of a cell phone located on the front, middle counter. The Defendant also collected the cell phone itself. Rogers testified that he dusted for fingerprints, and was able to lift several prints from the middle window counter of the Post Office, which he placed in a plastic evidence bag and sealed.

These prints were later analyzed by a Forensic Latent Print Analyst with the United States Postal Inspection Service, Norberto Rivera. Testifying as an expert, Rivera told the jury that the latent lifts were of sufficient quality to make several points of comparison with the Defendant's known prints. He concluded that the prints were a match to the Defendant,

specifically his left palm.

After the Government rested, the Defendant moved for a judgment of acquittal on all counts. In particular, the Defendant argued that he could not be convicted under 18 U.S.C. § 924(c) because Hunter's testimony was insufficient to prove that the object was a "firearm"—meaning that it "will or is designed to . . . expel a projectile by the action of an explosive." § 921(a)(3)(A). Hunter had testified that it could have been either a firearm or a well-made replica, so the Defendant argued that the evidence was insufficient to find a "firearm." The Court took the motion under advisement, and the trial proceeded.

One of the Defendant's defenses at trial was alibi. The robbers passed a patron when exiting the post office. That patron was Curtis Molton, an acquaintance of the Defendant's, who testified that he did not recognize either person leaving the post office to be the Defendant.

Cynita Wyatt and Elliot Diaz, friends of Lawson, both testified that the Defendant was at their apartment between 3:30 and 3:45 p.m. on the day of the attempted robbery.

Hanson also testified for the defense. She testified that she and the Defendant had gone to the post office the week before Christmas to buy stamps. She further testified that she had kicked the Defendant out of her home on December 18, and that he did not return to her apartment until 5:00 or 5:30 p.m. the next day. She admitted that on the evening of the robbery attempt the Defendant asked to use her phone to "try and track down his phone."

At the close of evidence, the Court denied the Defendant's motion for judgment of acquittal, finding that the evidence was sufficient to "possibly sustain a conviction." (Day 5 Tr. 26, ECF No. 118.) The jury returned verdicts of guilty on all three counts. The Court sentenced the Defendant on October 9, 2014, and he filed a timely notice of appeal.

On January 19, 2016, the Seventh Circuit affirmed the judgment of this Court in a published opinion. *United States v. Lawson*, 810 F.3d 1032 (7th Cir. 2016). Regarding the evidence, the court stated the following:

> The evidence against Lawson was extensive. In addition to the fingerprint evidence, the jury saw surveillance footage of the entire attempted robbery. The jury saw an object fall from the counter-jumper's pocket when he jumped over the counter and heard that Lawson's cell phone was found on the counter. Hanson testified that Lawson could not find his phone later that evening and used her phone to call his. The jury also heard testimony from eyewitnesses, including the post office worker who later identified Lawson as the counter-jumper.

*Id.* at 1044.

## DISCUSSION

Section 2255 allows a person convicted of a federal crime to seek to vacate, set aside, or correct his sentence. This relief is available only in limited circumstances, such as where an error is of jurisdictional or constitutional magnitude, or where there has been an error of law that "constitutes a fundamental defect which results in a complete miscarriage of justice." *See Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004). Motions to vacate a conviction or correct a sentence ask a court to grant an extraordinary remedy to a person who has already had an opportunity of full process. *Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006). A motion under § 2255 "is neither a recapitulation of nor a substitute for a direct appeal." *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995). A court may deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

In seeking to prove that his counsel rendered ineffective assistance, the Defendant "bears

a heavy burden." *Jones v. Page*, 76 F.3d 831, 840 (7th Cir. 1996) (citation omitted). To establish ineffective assistance of counsel, a petitioner must show that: (1) his attorney's performance "fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 688 (1984); and (2) there is a reasonable probability that "but for counsel's unprofessional errors the result of the proceeding would have been different," *id.* at 694. "A failure to establish either prong results in a denial of the ineffective assistance of counsel claim." *Rastafari v. Anderson*, 278 F.3d 673, 688 (7th Cir. 2002) (citation omitted).

The performance prong requires the Defendant to specifically identify acts or omissions that form the basis of his claim of ineffective assistance. *Strickland*, 466 U.S. at 690. Based on the totality of the circumstances, the Court must then determine whether the identified acts and omissions fall outside the range of professionally competent assistance. *Id.* The prejudice prong requires the Defendant to show that his trial counsel's errors are so serious as to render his trial fundamentally unfair or unreliable. *Lockhart v. Fretwell*, 506 U.S. 364, 368–69 (1993). "Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel." *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996).

The Defendant argues that his convictions on all three counts should be vacated because his trial counsel, Thomas O'Malley, rendered ineffective assistance "by failing to object to the jury instruction #22, and to challenge the sufficiency of the evidence underlying [count 1]." (Mem. of Law 2, ECF No. 136.) He also faults his appellate counsel for failing to challenge the sufficiency of the evidence for a conviction on count 1.

The relevant portion of the statute that the Defendant was charged with violating in count 1 makes it an offense for a person to rob or attempt to rob "any person having lawful charge,

7

control, or custody of any mail matter or of any money or other property of the United States," of "mail matter, or of any money, or other property of the United States." 18 U.S.C. § 2114(a). The maximum potential penalty is increased from ten years to twenty-five years "if in effecting or attempting to effect such robbery he wounds the person having custody of such mail, money, or other property of the United States, or puts his life in jeopardy by the use of a dangerous weapon." *Id.* The Defendant's theory is that he should not have been convicted of count 1 because Hunter, the customer who was approached with the gun during the robbery, was not a person included in the statutory language of 18 U.S.C. § 2114(a). Rather, it was Weigold who had "lawful charge, control, or custody of any mail matter or of any money or other property of the United States." *Id.* Therefore, because "Weigold was not present during the course of the attempted robbery," having already locked herself in the manager's office (Mem. of Law 3) there could not have been any force and violence, or intimidation used against Weigold, nor could he have put her "life in jeopardy by the use of a dangerous weapon." 18 U.S.C. § 2114(a).

The jury was instructed of the elements the Government had to prove to convict the Defendant of the count 1 charges. Specifically, Instruction Number 22 informed the jury that, to find the Defendant guilty of the offense of "putting a life in jeopardy during an attempted robbery of mail matter, money or other property of the United States, or aiding or abetting another in the same," it had to find, among other things, that the Defendant "put the life of Catherine Weigold in jeopardy by use of a dangerous weapon, that is, a firearm." (Court's Instruction No. 22, ECF No. 64.) Instruction Number 27 advised the jury that "'Put in jeopardy the life of any person' means to knowingly do an act which exposes another person to risk of death. In considering this element, you must focus on the actual risk of death created by the use

8

of the dangerous weapon or device. This risk might include direct risk to post office employees and indirect risk through a violent response by a customer or the police."

Despite his claims about Instruction Number 22, the Defendant does not identify any portion of that instruction that was inaccurate. In developing his argument, Instruction Number 27 becomes the focus of the Defendant's challenge. He identifies the instruction as problematic because it refers to the life of *any* person, even though the statute, § 2114(a), is not so broad.[1] The Defendant is correct that a more precise wording of Instruction Number 27 would have referenced the life of Catherine Weigold, thus mirroring Instruction Number 22. However, the Court is not convinced that counsel's failure to object to the jury instructions was objectively unreasonable, or that it is reasonably likely that the outcome of the trial would have been different had the jury instruction been more precise. *See Watson v. Anglin*, 560 F.3d 687, 693 (7th Cir. 2009) (imagining that it would "be no easier—and may well be a great deal harder—to show that a jury instruction was prejudicial [under *Strickland*] than it would be to show that the substance of the instruction violated the defendant's constitutional rights").

First, Instruction Number 22 preceded Instruction Number 27. Instruction Number 22 unambiguously required the jury to find that the Defendant put the life of Catherine Weigold in jeopardy by the use of a firearm. It would have been obvious to a reasonably jury that Instruction Number 27 was intended to define what it meant to put a life "in jeopardy," not to broaden the previously stated elements of the offense and replace Weigold with "any person."

Moreover, during closing argument, the Government specifically mentioned the elements

---

[1] The jury instruction is a Seventh Circuit pattern that is used in connection with bank robbery and other statutes that refer to placing the life of "any person" in jeopardy by use of a dangerous weapon or device. *See, e.g.*, 18 U.S.C. § 2113(d) (enhancement for armed bank robbery); 18 U.S.C. § 2118(c)(1) (enhancement for robbery involving controlled substances).

9

of count 1, including the third element of "put[ting] the life of Catherine Weigold in jeopardy by use of a dangerous weapon, that is a firearm." (Day 5 Tr. 38, ECF No. 118.) In the Defendant's closing argument to the jury, Attorney O'Malley argued the following with regard to this element:

> [T]he Government must prove each of the three following elements beyond a reasonable doubt. Ask yourself right now, have they proved that third element beyond a reasonable doubt? No. The only person that saw [the gun] was Dawn Hunter. Dawn Hunter can't recognize it as a firearm. And, I'd submit to you also, because this case isn't about Dawn Hunter, it's about Catherine Weigold, Catherine Weigold takes off, her life is never in danger. We don't know if anybody ever went back to that office.

(*Id.* 52.) Thus, the question of whether Weigold's life was put in jeopardy by the gunman's use of a firearm was squarely before the jury, despite the minor discrepancy in the jury instructions. Thus, the Court is not persuaded that the failure to object to the jury instructions fell outside the range of professionally competent assistance, or impacted the outcome of the trial and prejudiced the Defendant.

The Defendant also claims that his trial and appellate attorneys rendered ineffective assistance when they did not challenge the sufficiency of the evidence for count 1. The Defendant claims that the circumstances of the attempted robbery do not satisfy the elements of 18 U.S.C. § 2114(a), particularly with regard to whose life was put in jeopardy.

Before submission to a jury, a defendant may move for a judgment of acquittal on any offense for which "the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). The defendant may also make the motion after a guilty verdict or after the court discharges the jury. *Id.* "In deciding a Rule 29 motion, the court determines whether, at the time of the motion, there was relevant evidence from which the jury could reasonably find the defendant guilty

beyond a reasonable doubt, viewing the evidence in the light most favorable to the government, and bearing in mind that it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences." *United States v. Wamiq*, No. 12-CR-88, 2013 WL 3773377, at *1 (E.D. Wis. July 17, 2013) (citing *United States v. Reed*, 875 F.2d 107, 111 (7th Cir. 1989)). To prevail, a defendant "must show that no rational trier of fact could have found that the government proved the essential elements of the crime beyond a reasonable doubt." *United States v. Griffin*, 684 F.3d 691, 694 (7th Cir. 2012). To prevail on a claim that appellate counsel was ineffective, the Defendant must show not only that the claims omitted from his direct appeal would have been meritorious, but that they were "significant and obvious" and "clearly stronger" than the issues counsel did raise. *See Blake v. United States*, 723 F.3d 870, 888 (7th Cir. 2013). On appeal, "[a] defendant who challenges the sufficiency of the evidence faces a daunting standard of review." *United States v. Carter*, 695 F.3d 690, 698 (7th Cir. 2012). The appellate court views "the evidence in the light most favorable to the Government, defers to the credibility determination of the jury, and overturns a verdict only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *United States v. Perez*, 612 F.3d 879, 885 (7th Cir. 2010) (quoting *United States v. Huddleston*, 593 F.3d 596, 601 (7th Cir. 2010)).

      The Defendant believes that no jury could find him guilty of putting Weigold's life in jeopardy, and therefore both his trial and appellate counsel's performance fell below an objective standard of reasonableness when they did not challenge the sufficiency of the evidence. The Court disagrees. In *United States v. Smith*, 103 F.3d 600, 605 (7th Cir. 1996), the Seventh Circuit reviewed the "put in jeopardy" language of the federal bank robbery statute and concluded that

11

the focus of the analysis should be on the actual risk created by the robber's use of a dangerous weapon. *See also United States v. Simmons*, 581 F.3d 582, 586 (7th Cir. 2009). This risk might include direct risk to bank employees or indirect risk through a violent response by a customer or the police. *Smith*, 103 F.3d at 605; *see also Simmons*, 581 F.3d at 587 (finding that a potential violent reaction of the victim or law enforcement was enough to meet the in-jeopardy requirement of the armed bank robbery statute when an unloaded firearm was pointed at a teller during a robbery).

One of the risks in this case was from law enforcement involvement; simply because the police did not show up before the robbers fled does not mean there was no risk of them doing so. Weigold, after realizing that the post office was about to be robbed, retreated to the office and called 911. Additionally, the use of the gun could have prompted a desperate response from any of the five employees or the customer. While Weigold was in the manager's office, someone came to the door and jingled the doorknob, twice. The second time she realized that it was a co-worker, and she told him to lock himself in the bathroom. It was reasonable for a jury to believe that the lives of every person, including Weigold, were in jeopardy by the would-be robbers' use of the gun to help them get what they wanted during the post office robbery. That Hunter was arguably facing the most direct threat to her life did not mean that Weigold's life was not also placed in jeopardy by the Defendant's action, and the actions he aided and abetted. Any motion challenging the sufficiency of the evidence would have been met with the response that the Defendant had failed to show that no rational trier of fact could find that the Government proved the essential elements of the crime beyond a reasonable doubt. The jury in this case was, in fact, presented with the argument that the Defendant did not put the life of Weigold in jeopardy given

her retreat to the office, but rejected it when they returned guilty verdicts.

The strategic choice to, instead, pursue a defense that no gun was present during the robbery, did not fall below an objective standard of reasonableness.

> To satisfy the deficient performance prong, a petitioner must show that the representation his attorney provided fell below an objective standard of reasonableness. A court's scrutiny of an attorney's performance is highly deferential to eliminate as much as possible the distorting effects of hindsight, and we must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Under these standards, strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.

*Vinyard v. United States*, 804 F.3d 1218, 1225 (7th Cir. 2015) (internal citations and quotation marks omitted). Likewise, "[a]n attorney is not expected to raise every possible non-frivolous claim on appeal; winnowing down possible claims to those an attorney believes are strongest is a classic example of a strategic decision." *Id.* Proof of a firearm was essential to a conviction on count 2. It was also essential to a conviction on counts 1 and 3 as alleged. With respect to count 1, the Defendant's lawyer successfully argued for the inclusion of the lesser included offense of simple assault without the use of a dangerous weapon. He presented the defense that gave the Defendant an opportunity for an outright acquittal on count 2.

As an aside, whether the Defendant's use of the firearm satisfied the in-jeopardy element did not impact the offense of conviction, but only the potential penalties under the relevant statute. Putting a life in jeopardy by use of a dangerous weapon during a post office robbery increases the maximum potential penalty from ten years to twenty-five years. 18 U.S.C. § 2114(a). Here, the Defendant's guideline imprisonment range was 84 months to 105 months, and the firearm did not impact the base offense level that led to this range. *See* Presentence Investigation Report ¶ 39; *see also* U.S.S.G. § 2K2.4, Application Note 4 (stating that if a

sentence is imposed under § 924(c) in conjunction with a sentence for an underlying offense, no specific offense characteristic related to the firearm should apply when determining the sentence for the underlying offense). The Court sentenced the Defendant to 84 months on count 1, well below the statutory maximum that would have applied even if the Defendant had been convicted of the lesser included offense. In the end, the only impact the firearm had on the Defendant's term of imprisonment was for the separate conviction under § 924(c). Even the lesser included offense would have been considered a crime of violence for purposes of § 924(c). *See* Jury Instruction Number 23 (directing that the lesser included offense of count 1 required the jury to find that the Defendant attempted to take the property "by means of force and violence, or by means of intimidation"); *United States v. Rodriguez*, 925 F.2d 1049, 1052 (7th Cir. 1991) (applying common law definition of robbery to the statute to find it involving the taking of property from another person against his will by violence or putting him in fear); *cf. United States v. Armour*, 840 F.3d 904, 909 (7th Cir. 2016) (holding that bank robbery under 18 U.S.C. § 2113(a) qualifies as a crime of violence for purposes of § 924(c)). Accordingly, the Defendant did not suffer any prejudice from counsel's decision not to pursue a motion for judgment of acquittal for failure to satisfy the in-jeopardy prong of count 1.

Because the Defendant has not alleged any facts that would entitle him to the relief he seeks, the Court is not required to grant him a hearing. *See Martin v. United States*, 789 F.3d 703, 706 (7th Cir. 2015); 28 U.S.C. § 2255(b) (no hearing warranted where "the files and records of the case conclusively show that the prisoner is entitled to no relief").

## CONCLUSION

For the foregoing reasons, the Court DENIES the Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF No. 135]. The Motion for Release on Bail Pending Resolution [ECF No. 142], and the Motion for Status [ECF No. 145], are DENIED AS MOOT. Because reasonable jurists would not debate that the Motion fails to present a valid claim of the denial of a constitutional right, or that the Motion should have been resolved in a different manner, the Court DECLINES to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(3).

SO ORDERED on February 27, 2017.

                                                    s/ Theresa L. Springmann
                                                    THERESA L. SPRINGMANN
                                                    UNITED STATES DISTRICT COURT