UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cause No. 1:13-CR-4-HAB |
| | ) | |
| JULIUS LAWSON | ) | |

**OPINION AND ORDER**

Defendant filed a Motion for Compassionate Release (ECF No. 177) on October 5, 2020. The motion was referred to the Federal Community Defender to consider representing Defendant. (ECF No. 179). The FCD declined to enter his appearance. (ECF No. 180). The Government filed its Response (ECF No. 187) on October 22, 2020. Defendant has filed a reply (ECF No. 193) and multiple supplements (ECF Nos. 182, 191, 192, 193, 194, 195) in the interim. This matter is now ripe for review.

**A.   Factual Background**

Defendant was found guilty by a jury of his peers of three counts: attempted robbery of the property of the United States in violation of 18 U.S.C. § 2114(a), use of a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c), and interference with the performance of duties of a federal employee in violation of 18 U.S.C. § 111(a)(1).[1] The charges stemmed from an attempted robbery of a post office. He was sentenced to a term of 144 months' imprisonment with three years supervised release to follow. He is currently incarcerated at FCI Oxford in Oxford, Wisconsin, with a projected release date of April 18, 2023.

**B.   Legal Discussion**

**1.   *Extraordinary and Compelling Circumstances***

---

[1] Defendant asserts that he was offered a plea deal mid-trial that would have dismissed the § 924(c) count. The Court has been given no evidence to support this assertion and, in any event, Defendant apparently rejected that plea.

Defendant's filings request a sentencing modification. Generally, a court is statutorily prohibited from modifying a term of imprisonment once imposed. *See* 18 U.S.C. § 3582(c). A handful of statutory exceptions exist, however, one of which permits the court to reduce a sentence based on a retroactively applicable amendment to the sentencing guidelines that lowers the defendant's guideline range. 18 U.S.C. § 3582(c)(2). Another allows a court to grant an inmate compassionate release if the inmate meets certain requirements. *See* 18 U.S.C. § 3582(c)(1)(A).

Defendant seeks compassionate release pursuant to § 3582(c)(1)(A). Under this provision, a court may not modify a term of imprisonment except that –

(1) in any case --

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, . . . finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction …
>
> … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i).

Because Defendant, not the Director of the BOP, filed the motions, he must first demonstrate that he meets the statutory exhaustion requirement to proceed further. The Government concedes that Defendant requested release from his warden and that more than thirty days have elapsed since the request. Therefore, the Court finds that administrative remedies have been exhausted in this case.

Defendant alleges several grounds that he believes constitute grounds for compassionate release. Defendant cites to family circumstances; he claims that his father, who acts as sole care

giver to Defendant's son, has developed dementia. Defendant also asserts that his health supports release, noting his COVID-19 diagnoses, high blood pressure, and irregular blood test results relating to his liver function.

Congress did not define "extraordinary and compelling reasons" in the statute, instead delegating the matter to the Sentencing Commission to promulgate a policy statement that "describe[s] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The policy statement, contained in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 and the accompanying Application Notes, in line with the statutory directive in § 3582(c)(1)(A), requires a court to make several findings.

First, the court must address whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). To this end, a court is to consider the medical condition of the defendant, his age, his family circumstances, and whether there exists in the defendant's case an extraordinary or compelling reason "other than or in combination with" the other reasons described in the Application Notes. Second, the Court must determine whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court must consider the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

Additionally, when the defendant moves for a reduction based on COVID-19, Courts have also considered: (1) the specificity of the defendant's COVID-19 concerns, (2) whether the defendant has a medical condition that makes him especially susceptible to the dangers of COVID-19, and (3) the extent that the defendant's release would mitigate or aggravate the COVID-19

pandemic. *United States v. Barrett*, No. 2:17-CR-1, 2020 WL 3264112, at *3 (N.D. Ind. June 17, 2020); *see also United States v. Davis*, No. 2:19-CR-74-3, 2020 WL 1951652, at *1–2 (N.D. Ind. Apr. 23, 2020) (applying similar factors to consider whether there was a "compelling reason" for pretrial release due to the COVID-19 pandemic). In the context of the COVID-19 pandemic, "§ 3582(c)(1)(A) contemplates a sentence reduction for specific individuals based on the individuals' particular circumstances of where he is housed and his personal health conditions." *United States v. Melgarejo*, No. 12-cr-20050, 2020 WL 2395982, at *3 (C.D.Ill. May 12, 2020).

Taking Defendant's family argument first, Defendant relies on the commentary to U.S.S.G. § 1B1.13, which provides that "[t]he death or incapacitation of the caregiver of the defendant's minor child" can constitute extraordinary or compelling reasons for release under § 3582(c)(1)(A). *See* U.S.S.G. § 1B1.13, cmt. n.1(C)(i). There is very little case law interpreting this provision, so the Court takes it at its plain language, requiring Defendant to show the death or incapacitation of his child's caregiver.

The Court finds that, considering the evidence provided by Defendant, § 1B1.13 does not apply. Defendant has provided the Court with evidence that he has a minor son, but none of the other elements have been satisfied. The Court has no evidence that Defendant's father is the son's caregiver, nor does it have any evidence that Defendant's father suffers from any mental deficiencies. To the contrary, Defendant has provided the Court with a court order showing that the child's maternal grandmother has been given custody. (ECF No. 194 at 3–9). Defendant asserts that this arrangement is temporary, and this may be true. However, the court order is clear evidence that Defendant's father is not the sole caregiver for Defendant's son, defeating any claim for compassionate release on this basis.

Turning to Defendant's health, his hypertension and unsubstantiated liver disease might put him at increased risk of severe illness from COVID-19.[2] However, Defendant has alleged no significant symptoms arising from either condition. Instead, Defendant largely focuses on his COVID-19 diagnosis as grounds for compassionate release.

Defendant's experience with COVID-19 has been a mixed bag. He is not asymptomatic, but also has not exhibited severe symptoms nor required hospitalization. In the absence of some indication that Defendant's COVID infection is particularly serious, the Court cannot conclude that the condition is grounds for early release. *See United States v. Billings*, No. 19-CR-00099-REB, 2020 WL 4705285, at *6 (D. Colo. Aug. 13, 2020) (denying the defendant's motion for compassionate release in part because "[the defendant] experienced no serious symptoms despite testing positive for the virus and has no reported lingering side effects now that he has recovered."); *United States v. Reece*, No. 16-20088-JAR, 2020 WL 3960436, at *6 (D. Kan. July 13, 2020) (noting that the defendant had recovered from COVID-19 and did not have severe complications from the virus and finding that these facts cut against defendant's compassionate release request); *United States v. Gallegos*, No. 4:17-CR-568, 2020 WL 3403032, at *3 (S.D. Tex. June 19, 2020) (observing that, because the defendant had already contracted and fully recovered from COVID-19, it could not say that the defendant's asthma substantially diminished the defendant's ability to care for himself in the facility).

Defendant seemingly realizes that his current COVID infection is not a basis for release, arguing primarily that his *next* COVID infection could be particularly serious.[3] The Court recognizes early scientific indications that individuals can become infected multiple times by

---

[2] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html
[3] Defendant further argues that the risk of re-infection defeats any suggestion that his motion has been mooted by his COVID diagnosis. The Court would note, however, that the Government has not made a mootness argument nor would this Court have found mootness even if the argument had been made.

different strains of COVID-19 and that, in some instances, the second infection is more serious.[4] However, according to the CDC, reinfection remains rare.[5] The Court does not find any reason to believe that Defendant is particularly susceptible to reinfection or that his symptoms would be significantly worse were he to be re-infected. Any suggestion along those lines is purely speculative.

Defendant cites the conditions at FCI Oxford as a basis for relief, but the Court cannot agree. As of the date of this Opinion and Order, FCI Oxford had only one reported infection among inmates, presumably that of Defendant.[6] There is no reason to believe that Defendant would be any safer in the general population than he would be at a facility where he represents the only COVID-positive individual. *See, Melgarejo*, 2020 WL 2395982, at *3 ("[A] prisoner [may] satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus.").

Moreover, the Government's brief cites ongoing efforts by the Bureau of Prisons to take serious and substantial steps to reduce the spread of COVID-19 within its facilities. *See* Federal Bureau of Prisons, COVID-19 Action Plan: Phase Seven (posted on May 20, 2020), https://www.bop.gov/resources/news/20200520_covid-19_phase_seven.jsp (last visited September 1, 2020); see also, BOP COVID-19 Modified Operations Plan, https://www.bop.gov/coronavirus/covid19_status.jsp. The minimal number of cases at this institution is a testament to the BOP's mitigation and safety efforts. Additionally, the fact that

---

[4] Richard L Tillett, PhD, et al., Genomic evidence for reinfection with SARS-CoV-2: a case study, The Lancet, October 12, 2020, https://www.thelancet.com/journals/laninf/article/PIIS1473-3099(20)30764-7/fulltext
[5] https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html
[6] https://www.bop.gov/coronavirus/

Defendant has not required hospitalization demonstrates the ability of the BOP to adequately treat cases that arise at its facilities. In light of the foregoing, the Court does not find that Defendant has demonstrated extraordinary or compelling circumstances supporting his release.

**2.**     *§ 3553(a) Factors*

Even if the Court did find extraordinary and compelling circumstances, it would still deny Defendant's request for relief. As the Government's brief details, Defendant has a long and serious criminal history. That history culminated with the instant offense, where Defendant and his accomplice wielded firearms to steal from a post office. His conduct, then, is only getting worse as time progresses. This history was correctly considered when Defendant was sentenced originally, and the Court sees no reason to depart from the sentencing decision that was reached.

Defendant notes that he has made efforts to improve himself while incarcerated and the Court congratulates him on those efforts. His efforts at obtaining his GED and a commercial driver's license will help him when he is released. However, the Court does not find that these efforts alter the initial grounds for his sentence. A reduction to time served, which would cut more than two years off Defendant's sentence, would undermine the purposes of sentencing.

**C.**     **Conclusion**

For the foregoing reasons, Defendant's motion (ECF No. 177) is DENIED.

SO ORDERED on November 23, 2020.

     s/ *Holly A. Brady*
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT